13992. STAFFORD *et al. v.* THE STATE.

LUKE, J. The evidence relied upon by the State to connect the defendants with the offense charged is wholly circumstantial and does not exclude every reasonable hypothesis save that of the guilt of the defendants.
*Judgment reversed. Broyles, C. J., and Bloodworth, J., concur.*
DECIDED DECEMBER 13, 1922.

Conviction of larceny of baled cotton; from Murray superior court — Judge Tarver. September 16, 1922.

Upon circumstantial evidence, consisting mainly of testimony as to tracks of persons and of a wagon drawn by a mule and a horse, and testimony tending to show that the stolen bales of cotton were rolled across a creek to the wagon, on poles which had shortly before been seen in Harve Stafford's yard, he and two of his sons — George and Clayt — were found guilty under an indictment charging them with larceny of two bales of cotton, the property of J. E. Love, stored in a house belonging to Love. A third son, Will Stafford (who was indicted but not tried with the others), it was testified, hired Walt Henderson, " about the time Mr. Love's cotton was taken," to haul in Henderson's truck two bales of cotton to a warehouse in Calhoun from a place in the road where Will Stafford and another man had a wagon with the cotton. Henderson did not remember the name of the warehouse, and did not know whose cotton he carried. The house in which Love's cotton was stored when stolen was in a field through which ran a creek; the two bales were stolen at night, and the tracks and the poles mentioned above

were found near the creek the next morning, with indications that the bales had been rolled downhill from the house to the creek. Love, in his testimony, said: " This place was a half a quarter, may be a little further, from the defendants' home." " The wagon was about 30 feet from the creek." " I saw the tracks of the people, looked like about four sets. I think there was four of them. The tracks went right along with the way the cotton went, looked to be something like a man's track. The shape of the shoe, except one, I believe it was, looked like about the shoe I have on here. . . The wagon tracks led out north about 30 or 40 yards, and then turned back east to get back into the road they had left. . . The tracks I saw were fresh. . . They looked like they had just been made the night previous. . . I found out the poles had been cut right above these defendants' house. They all lived there together, except that I don't know whether George made his home. there or not. The poles were cut on Mr. Mason's land, I think just across the line between Mason and Mr. Stafford. It is a mile, I reckon, to any other house besides defendant's. These were the particular poles for the reason that I measured from the stumps to where the top was cut out of it, and it corresponded with the length of the poles. I measured the stump and measured about the butt end of the poles, and the tip end, and it all corresponded. They did not appear to have been cut very long. . . The building in which the cotton was stored was about 500 yards from my home where I lived. . . I never did see the cotton or find where it went to. . . I didn't trace it any further back than to the road in about 150 yards from defendant's home. . . There were two sets of tracks that went right back the way the wagon came coming into the field from the road, and one track followed the wagon out as it went out. . . I am a little nearer to where the cotton was than they (the defendants). I am not the only one that was nearer. Mr. Gordon at that time lived near it, . . about 400 yards. . . I measured the one track that went out with the wagon. Anybody wearing the same size shoe would make the track, I suppose — same shape shoe and all. . . I measured George's track one day and it compared with the one that followed the wagon out."

Pope Gordon testified that at the time the cotton in question was taken he lived with Mr. Love, " not very far from where the cotton was," and " first found out about Mr. Love's cotton," and

told him about it; that he " saw where that wagon that came down into the field and upon which the cotton was loaded came from; it came out of Mr. Harve Stafford's barn, down to where the cotton was loaded on;" that he " traced it, following the track;" that the tracks of the horse and the mule were barefoot tracks; that the track following the wagon out from where the cotton was loaded was a sharp-toed shoe, and that after he got to the road he did not see any shoe-tracks. L. D. Wood testified that on " Tuesday before they claim cotton left on Wednesday " he saw at Harve Stafford's wood-pile " the pine poles near the creek that had been used to roll the cotton home;" from their looks and size he believed they were the same poles, but could not swear " pine blank " that they were; that they were not there Tuesday morning, but were there at noon, and " were gone the day after Mr. Love's cotton was gone."

An attempt to establish an alibi for George Stafford was made by the defendants, and in their statements at the trial they denied any connection with or knowledge as to the taking of the cotton in question.

*C. N. King, W. E. & W. G. Mann,* for plaintiffs in error.

*J. M. Lang, solicitor-general,* contra.